## DECEMBER TERM, 1843.

### HENRY S. FOOTE, *et al. v.* BURR GARLAND, *et al.*

F. and J. entered into partnership to transact the mercantile business, F. sold out to J., and J. gave F. a bond of indemnity with surety, conditioned to pay all the liabilities of the firm ; J. died insolvent, without any legal representative, and leaving the debts unpaid. F. filed a bill against the sureties in the indemnity bond, to compel them to a specific performance of their contract ; *held,* on demurrer to the bill, that the Court could not grant the relief asked, and decree a specific performance of such a contract.

THE bill was filed by Henry S. Foote, and a great many others, as complainants, against Burr Garland, and George N. Hoan, the latter of whom was a non-resident. It averred that Foote, one of the complainants, and Thomas C. Johnson, in the month of September, 1836, formed a mercantile partnership, under the name of T. C. Johnson & Co., to do business in this State. In pursuance whereof, Johnson went on to New York and Philadelphia, and purchased goods of the other complainants, to the amounts set forth in the schedule attached to an assignment, filed with the bill. The goods were brought to Mississippi, and the business commenced in Madisonville. Afterwards, in May, 1837, the partnership was dissolved ; the goods on hand, and everything, transferred to Johnson, who agreed to pay all the debts of the concern ; and to secure that object, on the 5th of May, 1837, he, with the defendants, Burr Garland and George W. Hoan, his security, entered into a penal bond to complainant, Foote, in the penalty of twenty thousand dollars. To which was attached a condition, reciting the purchase of the goods in New York and Philadelphia, in general terms ; the bringing them to Mississippi ; the dissolution of the firm ; and the agreement that the goods should be delivered to Johnson, as his own property, and that he should be responsible for all the liabilities of said firm, from its origin up to that time ; then the condition is, " Now if the said Johnson shall well and truly pay off and satisfy all the debts and liabilities of said firm, *as aforesaid,* either in Philadelphia or New York, or elsewhere, and well and truly save the

said Foote harmless from all responsibilities growing out of, or connected with, said firm, then, and in that case, this obligation is to become void and of no effect ; otherwise, to be of full force and validity." The debts in New York and Philadelphia, in part, are unpaid ; about fifty per cent. having been made on an assignment made by Johnson, which was exhibited with the bill. Johnson had departed this life without any representative, leaving nothing. That Hoan was a non-resident. The bill prays that the defendants be compelled specifically to execute the bond, by paying off the debts mentioned in the bill, for account, and for general relief.

A general demurrer, for want of equity or title, to come into the Court, was filed.

*Robert Hughes*, for the demurrer.

1. The demurrer should be allowed, because the complainant has no right to come into this Court against the defendants.

The defendants are the sureties in an indemnity bond. The principal has not been sued, and this bill is filed, to compel the defendants to a *specific* execution of the contract contained in the bond.

In the case of *Flint* v. *Brandon*, it is said : " This Court does not, I apprehend, profess to decree a specific performance of contracts of every description. It is only where the legal remedy is inadequate, or defective, that it becomes necessary for courts to interfere." In *Errington* v. *Aynesley*, Lord Kenyon says, " a specific performance is only decreed, when the party wants the thing in specie ; and cannot have it in any other way." See 8 Vesey, 163.

Does the rule, which is here laid down by the Master of the Rolls, apply to this case ? It does, most clearly. He has shown that he wanted the thing in specie ; but has he shown that he cannot get it in any other way ? We think he has not. By the complainant's statement in his bill, the firm of Johnson & Co. were indebted to the amount, and to the persons named in the schedule filed with the bill. Those debts, Johnson had agreed to pay, and to save complainant harmless in reference to them. He had or had not a cause of action in consequence of those debts being and remaining unpaid,

if the condition of the bond was broken ; and an action at law would lie, and the plaintiff, if any thing, would recover the amount of the debt, with which he might pay those debts, and thereby the thing in specie would be obtained.

2. But what right has the complainant to insist that these defendants should be compelled to execute' these covenants. The defendants are only securities. They did not agree that they would pay all and save harmless, but only that Johnson should do so ; and, in the event that he did not perform that, the bond should be forfeited, and they would be responsible upon it. In the case of *Waters's* Rep.'s v. *Riley's* Administrator, 2 Har. & Gill, 305, the Court says : " In the case of a surety, who is bound only by the bond itself, and is not under the same moral obligation to pay, equity will not interfere to charge him beyond his legal liability." As, in this case, the sureties have agreed that Johnson should do the act provided for by the bond, if not done, they, the sureties, were liable in an action for the amount of damages sustained by a breach of this agreement. This is the utmost of their legal liability. Yet, in addition to the engagement of the sureties, it is now sought to add another, by some legerdemain in this Court, which is an engagement which is not in the bond, that the sureties would do the thing. Suppose an agreement for the sale of land, and a bond is given with security, conditioned to complete the title, in the event of the death of the principal obligor : would the Court, on bill filed against the surety, compel a specific execution of the agreement ? We think not ; because the surety had not engaged to perform, but only that the principal should ; but in the event that he did not, that he would pay damages.

3. There was no cause of action at law, or right to bring this suit, because the complainant, by his bill, has shown no breach of condition of the bond.

A distinction is taken in the books between cases where the debts or liabilities provided for by the bond have accrued before, and those which accrue after, the execution of the bond. In the first, no right or cause of action accrues, until action brought against the obligee ; while in the latter, if the debt has accrued, and is

unpaid, the action accrues. See *Lewis* v. *Crocket*, 3 Bibb. 197 ; *Rudd* v. *Hanna*, 4 Monroe, 530.

The debts which it is alleged are unpaid, and for the non-payment of which it is said there is a breach of the bond, and upon which it is insisted a cause of action accrued, or a right to bring this suit arose, were all created and had accrued before the giving the bond of indemnity. They were then known to exist, were unpaid, and the complainant, instead of insisting that they should be paid, took a bond for their payment, and to save him harmless. In other words, I know the debts are unpaid, but you have promised to pay them, and I take your promise ; see that I do not suffer ! Has the party sustained any damage, which gives him a right of action ? The leaving the debts unpaid is no breach of the condition of the bond, because that was true at the time the bond 'was given ; something else, then, must turn up before the bond is forfeited, and this, the courts have said, is the commencement of an action for the debts due and unpaid.

*Hubbard,* in behalf of the bill.

The defendants have demurred to the bill, and allege, as the principal ground of the demurrer, that complainants have a remedy at law upon 'the bond to indemnify, and therefore are not entitled to the aid of this Court, to decree a *specific* performance of the, condition of the bond, &c.

The rule is too familiar to need reference to authority to sustain it, that a court of equity will refuse its jurisdiction to aid a party, unless his remedy at law is clear, unembarrassed, and adequate.

It is respectfully insisted by the counsel for complainants, that their remedy for a breach of the condition of the indemnity bond, as set forth in this bill, *is not clear, unembarrassed, and adequate at law.*

There are twenty-five different creditors of the firm of Thomas C. Johnson & Co., as set forth in the exhibit (A) to the bill. Suppose the first-named creditor should bring his suit at law against the complainant Foote, who was a member of that firm, to recover the amount of his claim, and obtain his judgment at law. Here

Foote, et al. *v*. Garland, et al.

would be a breach of the condition of the bond, for which Foote would be entitled to recover damages of the defendants, *pro tanto*.

And suppose the next creditor, in order, then brings his action at law against Foote, and in like manner recovers his debt, and each successive creditor in like manner bring his separate action to recover his claim, there would be twenty-five separate suits ; out of which would arise, by possibility, as many separate causes of action in favor of Foote against the defendants (the obligors) in the bond. Here would be a palpable violation of that familiar legal maxim, that the law abhors multiplicity of suits, — all of which might be, and ought to be, avoided by compelling the defendants to perform the condition of their bonds. And equity, following the same familiar maxim, will interpose its salutary aid to " prevent multiplicity of suits " at law. But the stipulations in the bond are, not that the obligors will pay and refund to Foote (the obligee) the amount, with damages, which he may have to pay on account of the debts of the firm of Thomas C. Johnson & Co., but it is, " that they (the obligors) will pay those debts in the first instance, and save Foote harmless from them," &c.

This the defendants, by their demurrer, admit. they have failed to do.

In *Champion* v. *Brown*, 6 J. C. R., Chancellor Kent says, " *There are cases to show that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, upon the principle on which the Court entertains bills quia timet*," and cites 1 Vernon, 189 ; 2 Ch. Cases, 146. See also 2 Story's Com. 145, 146.

The case of *Ranelaugh* v. *Hayes*, above referred to in 1 Vernon, 189, is identical in principle with the case at bar, and clearly and fully sustains the position, that this Court will decree the specific performance of covenants to indemnify, although they sound merely in damages ; and the Lord Keeper compares that case to that of a surety, protected by a counter-bond, " although not troubled or molested for the '*debts* ;' yet, at any time after the debts are payable, this Court will decree the *principal* to discharge the debts ; it being unreasonable that a man should always have such a cloud hanging over him."

In conclusion, it may be urged as an additional reason, why this Court should entertain this bill, that it involves extensive and complicated matters of account, which are peculiarly the subject of equity jurisdiction, all of which may be settled and liquidated between all the parties, under the direction of one and the same decree; which could not be done in a court of law without great expense, unnecessary consumption of time, much embarrassment in the adjustment of all the claims due the respective creditors, and a multiplicity of unnecessary lawsuits.

It is therefore respectfully insisted, by the counsel for complainants, that the demurrer ought to be overruled.

*Hughes*, in reply.

The difficulty suggested by the counsel in his first position, as to multiplicity of suits, is easily answered ; more than one action could not be commenced on the bond of indemnity, but as the first breach took place the forfeiture of the bond would take place, when a suit would be commenced, and a judgment would be rendered for the penalty of the bond, to be discharged by the payment of damages sustained ; those damages would then be suggested on the roll, and then a recovery had ; and afterwards, as other cases arose, suggestions would be made and damages recovered until the whole penalty recovered. See Revised Code, 117, sec. 55. The other points are sufficiently answered in the brief already made out.

CHANCELLOR. This is a bill to enforce a specific performance of a bond of indemnity, to which there is a general demurrer. I had occasion to examine the precise question here presented, in the late case of *Buckner* v. *Hamborough, et al.*, 1 Freeman's Chancery Reports, 533, in which I held that no relief could be given in a case like the present. I refer to that case, for the authority upon the question, and as containing a full exposition of my views, applicable to the one before me. Let the demurrer be sustained, and the bill dismissed at the costs of the complainant.